United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 14, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-34088 |
| THOMAS GREGORY BROWN, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | |
| JEFF JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-3447 |
| | § | |
| THOMAS GREGORY BROWN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Before the Court is the complaint of Jeff Jackson [Jackson] against the debtor, Thomas Brown [Brown]. Trial was held on November 14, 2022, and both Jackson and Brown testified. They were the only witnesses. They unfortunately tell very different stories.

Jackson and Brown were neighbors in 2016 as they lived across the street from each other. Brown owned a 1970 Barracuda [Barracuda] which Jackson agreed to buy. On November 19, 2016, Jackson paid Brown $30,000.00 by cashier's check.[1] However, there was no transfer of title of the Barracuda or any other written documentation regarding the sale of the vehicle. All of the negotiations and transactions other than the check were oral. The parties agree that there was a purchase of the vehicle, but they argue about its terms. They agree that the Barracuda was repossessed but disagree as to how it occurred or if it was voluntary. Their testimony is divergent, with elements of commonality.

Jackson testified that he agreed to pay $40,000 for the vehicle with a $30,000.00 down payment and the balance over 2 to 3 years, with no payments for six months, but there were no definite payment terms ever agreed to between the parties. He testified that later Brown agreed to a price reduction of $2,000.00 to $38,000.00 based on the return of a stereo in the car but that the

---

[1] ECF No. 16-1.

1 / 6

$8,000.00 balance was never paid. He also stated he was never warned of the car's repossession, that he received no notice of it or any notice of the subsequent sale by Brown.

Brown testified that he never received the stereo, never agreed to a price reduction on the Barracuda, was going to be paid the purchase price balance of $10,000.00 at $500.00 per month for 20 months, that he demanded payment of the balance of the unpaid purchase price on multiple occasions, that he gave multiple oral warnings to Jackson that he was going to repossess the car and that he was never paid any of the $10,000.00 owed.

The commonality of the testimony is that on or about November 14, 2017, the Barracuda, which was in the garage of Jackson, was moved to the garage of Brown. This occurred according to Jackson, due to a car switch as Jackson had stored a separate vehicle in the garage of Brown after his purchase of the Barracuda, and the Barracuda was in the garage of Jackson. Thereafter by testimony of Brown, the Barracuda was sold between November 14, 2017 and November 28, 2018 to a shop in Baycliff for $10,500.00 in cash. This transaction is totally undocumented.

All of the described transactions were totally oral. Other than the cashier's check for $30,000.00, there is no documentary evidence to support either set of allegations by either party. The Court finds the testimony of Jackson, as a whole, more believable than that of Brown due to Brown's lack of memory and lack of any supporting documents as described herein. However, some testimony by each party does not survive judicial scrutiny.

Jackson testified that there never were payment terms for the balance of the purchase price of $10,000 at the inception of the purchase other than it would be paid over two to three years. This testimony is suspect as one would expect this sum of money to be repaid on some definitive terms. As to his claimed reduction of the purchase price balance to $8,000.00, which would have occurred after May 17, 2017, when Jackson became injured, this sum was never paid. Again, this is suspect. While Jackson testified he could pay this sum, he never did, for reasons that were never discussed. He never testified as to if or how he intended to pay either sum. This testimony regarding the payment [and his silence as to the non-payment] of the balance of the purchase price is not compelling or believable. If he intended to own the Barracuda, he would have had to complete the payment of the purchase price, irrespective of whether it was $40,000.00 or $38,000.00.

Likewise, Brown's testimony that he sold the Barracuda for $10,500.00 in cash to an unknown shop in Baycliff[2] is not believable, because this could not have occurred without the transfer of title and other written documentation which could have easily been researched. Additionally, the price received by his testimony seems extremely low given the balance of testimony in the case. The Court finds the price obtained as testified by Brown is not accurate. The Court holds that it sold for a sum in excess of $10,500.00 as described herein. Still further the testimony as it was given by Brown as to the sale in Baycliff is so vague as to be not reliable.

## STANDARD & BURDEN OF PROOF

The plaintiff, Jackson raises two causes of action under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6). "[T]he standard of proof for the dischargeability exception in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."[3] "Nondischargeability must be established by a preponderance of the evidence."[4]

## LEGAL ANALYSIS

**11 U.S.C. § 523(a)(2)(A)**

Pursuant to 11 U.S.C. § 523(a)(2), a discharge under Chapter 7 will not be granted as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debt—
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Here the claim of the plaintiff, Jackson, is that he is owed a debt for property, i.e. the misappropriated Barracuda that was repossessed by Brown due to false representations. With respect to a false representation, the Fifth Circuit and others "have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under

---

[2] Cash sales to unknown buyers are typically always suspect.
[3] *Grogan v. Garner*, 498 U.S. 279, 291 (1991).
[4] *Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

section 523(a)(2)(A).[5] "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an overt act is not required. Moreover, a misrepresentation need not be spoken, it can be made through conduct."[6]

Here the Court holds that Jackson's allegations regarding repossession are more believable that that of Brown. That Jackson never received notice, oral or written, and that while he had not paid the balance of the purchase price, notice of the repossession was still required to be given to him. The Court finds that Brown had a duty to speak and did not. Both before the repossession but importantly also after, as to the manner and price of the sale to allow for any credits against the purchase price. That his concealment and silence both before and after the sale constituted fraudulent misrepresentation. Accordingly, the Court holds for Jackson on this claim.

**11 U.S.C. § 523(a)(6)**

Section 523(a)(6) requires that the debt is nondischargeable if the plaintiff was harmed as an intended result of the defendant's actions. It states in pertinent part:

(a)     A discharge under section 727 . . . of this title does not discharge an individual debt—
. . .
(6) for willful and malicious injury by the debtor to another entity or to property of another entity.

Section 523(a)(6) requires a showing that the debtor intended to harm the plaintiff.[7] "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.' Or Congress might have selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.'"[8]

Applying the Supreme Court's pronouncement that Section 523(a)(6) requires actual intent to cause injury, the Fifth Circuit has held that for a debt to be nondischargeable, a debtor must

---

[5] *In re Acosta,* 406 F.3d 367, 399 (5th Cir. 2005) (*quoting In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)), *abrogated on other grounds by Ritz*, 136 S. Ct. at 1581.
[6] *In re Mercer*, 246 F.3d 391, 404 (5th Cir. 2001).
[7] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) (Debt arising from medical malpractice judgment, attributable to physician's negligent or reckless conduct, did not fall within willful and malicious injury exception to discharge)
[8] *Id*. at 61.

have acted with 'objective substantial certainty or subjective motive' to inflict injury."[9]  "Despite similarities in the language used to describe an injury under Section 523(a)(6) and intentional torts, Section 523(a)(6) creates a narrower category of tortious conduct."[10]

Here, the Court holds that the actions of Brown in disposing of the vehicle without notice [again before and after the sale] to Jackson were with the objective substantial certainty or subjective motive to inflict injury by dispossessing him of his possession and possible ownership of the Barracuda, or after the sale inflicting injury by failing to provide notice of any required credits against the agreed upon sales price.  Again, as a whole, the Court finds the testimony of Jackson more believable than that of Brown.  Accordingly, the Court holds for Jackson on this claim.

## DAMAGES AND NON-DISCHARGEABLE JUDGMENT

Plaintiff seeks actual damages of $34,500.00.[11]  The calculation of this sum is unclear as it was not supported by any evidence at trial.  Testimony was that Jackson paid a $30,000.00 down payment for the vehicle and installed improvements of $1,750.00 in value [but not cash] in a used carburetor, fuel lines and a battery.  However, as earlier discussed, Jackson did not fully pay Brown and owed him either $10,000.00 or $8,000.00 for which he never accounted in his testimony.

For purposes of a damage calculation, the Court holds that the agreed upon purchase price was $40,000.00 and not the reduced $38,000.00 as claimed by Jackson.  That Jackson failed to pay the remainder of the purchase price of $10,000.00 to Brown resulted in damages to Brown.  That the additional equipment installed by Jackson did not materially affect the value of the Barracuda.  Accordingly, the Court awards a non-dischargeable judgment of $20,000.00 to Jackson against

---

[9] *In re Williams*, 337 F.3d 504, 508–09 (5th Cir. 2003) (*quoting Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)).
[10] *Id*. at 509.
[11] ECF No. 1, Complaint page 6 of 7.

Brown.[12]  Alternatively, the Court finds that the Barracuda was sold by Brown for an amount that would have required a repayment to Jackson based on the purchase price of $40,000.00, i.e. that Brown received $30,000.00 for the second sale of the car to the unknown shop in Baycliff, that accordingly he received a total of $60,000.00 for the Barracuda and that $20,000 ($60,000.00 - $40,000.00) should have been returned to Jackson based on the agreed upon oral purchase price of  $40,000.00.

## CONCLUSION

**IT IS ORDERED** that Plaintiff; Jeff Jackson is awarded a non-dischargeable judgment of $20,000.00 plus post judgment interest at the federal judgment rate against Thomas Gregory Brown for which let execution issue.

All other relief is denied.

A final judgment shall be entered closing this adversary proceeding.

**SO ORDERED**.

  SIGNED 11/14/2022

_____
Jeffrey Norman
United States Bankruptcy Judge

---

[12] The $30,000 down payment less the unpaid $10,000.00 balance of the purchase price.